UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VICTOR CHEONG,

Plaintiff,

– against –

THE BANK OF EAST ASIA, LTD.,
THE BANK OF EAST ASIA, LTD.,
NEW YORK BRANCH,

Defendants.

**OPINION & ORDER**

22-cv-9234 (ER)

Ramos, D.J.:

Victor Cheong brings this action against his former employer, The Bank of East Asia, Ltd. and the Bank of East Asia, Ltd., New York Branch (collectively, the "Bank of East Asia" or "BEA"), alleging that they subjected him to discrimination based on age, sexual orientation, and national origin; a hostile work environment; and retaliation in violation of federal and state law. Doc. 27. Before the Court is BEA's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. 29. For the reasons set forth below, the motion is GRANTED.

## I.  BACKGROUND

### A.  Factual Background[1]

Cheong is a 63-year-old male who is unmarried and who identifies as gay. Doc. 27 ¶¶ 8–9. Cheong was born in the Philippines, is an American citizen, and is fluent in English, Mandarin, and Cantonese. Doc. 27 ¶¶ 8, 19. Cheong has a master's degree in business administration (MBA) from Harvard Business School, has a strong accounting

---

[1] The following facts are based on the allegations in the complaint, which the Court accepts as true for the purposes of the instant motion. *See, e.g., Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). The Court also considers documents "incorporated in [the complaint] by reference, and documents integral to it." *Vogel v. TakeOne Network Corp.*, No. 22 Civ. 3991 (ER), 2023 U.S. Dist. LEXIS 144922, at *10 (S.D.N.Y. Aug. 16, 2023).

background, and has spent over 25 years working in commercial banking.  Doc. 27 ¶¶ 11, 42, 166.

BEA is a banking and financial services company headquartered in Hong Kong. Doc. 27 ¶ 20.  BEA is the largest independent local Hong Kong bank with approximately 9,000 employees.  Doc. 27 ¶¶ 20, 26.  BEA's New York branch has approximately 50 employees.  Doc. 27 ¶ 21.  To Cheong's knowledge, BEA is run by members of the Li family from Hong Kong.  Doc. 27 ¶ 26.  Cheong alleges in his second amended complaint ("SAC") that many people from Hong Kong consider Filipinos to be lower class, and that BEA holds a similar mentality, often favoring "Hongkongers," or individuals from countries other than the Philippines for lucrative positions.  Doc. 27 ¶¶ 34–36.

In April 2016, Victor Li, the then General Manager of BEA's New York Branch, hired Cheong to be Head of the Business Development Department ("BDD").  Doc. 27 ¶ 37.  Cheong's starting salary in this position was $150,000.  Doc. 27 ¶ 45.  However, Li told Cheong that he could expect salary increases up to approximately $400,000, as well as career advancement.  Doc. 27 ¶¶ 37, 45.  Cheong's main responsibility as Head of the BDD was to originate commercial real estate loans.  Doc. 27 ¶ 38.  Cheong received a 4 out of 5 on his first performance review in 2016 from Li, accompanied by a bonus and salary increase.  Doc. 27 ¶ 56.  A 4 out of 5 was considered a high review, and Cheong is "not aware of anyone who has received a rating of 5."  *Id.*

Maggie Kar Lai Wong was transferred from BEA's Hong Kong head office to the New York Branch, in August 2017.  Doc. 27 ¶ 46.  In New York, Wong took on the title of Senior Vice President of China Business ("SVP").  Doc. 27 ¶ 46.  Her primary purpose in this role was to support BEA's business opportunities with borrowers in China.  Doc. 27 ¶ 51.  This was a newly created title, and since BEA did no post the position internally or externally, Cheong had no opportunity to apply.  Doc. 27 ¶ 47.  Cheong felt that he was more qualified than Wong for this new position.  Doc. 27 ¶ 52.  Cheong assumed that

Wong must have had a "higher education degree from somewhere in Hong Kong" but is otherwise unaware of Wong's background.  Doc. 27 ¶ 55.  Wong was approximately 50 years old, about seven years younger than Cheong when she was hired and is heterosexual.  Doc. 27 ¶ 57.  Cheong alleged that Wong's appointment to the new position was influenced by Wong's connection to the Li family.  Doc. 27 ¶ 59.  Cheong felt that, in his role as Head of the BDD, he was already performing the duties that Wong assumed in her new position.  Doc. 27 ¶ 60.  Wong's compensation package was also significantly higher than Cheong's, which Cheong interpreted as favoritism towards Hong Kongers and younger employees.  *Id.*

In April 2018, Li circulated an organizational chart which identified Wong as the head of the New York Branch's new China/Corporate Business Department and changed her title to "SVP & Head of China Business and Corporate Lending."  Doc. 27 ¶¶ 61, 63. Under this new structure, all of Cheong's previous direct reports now reported directly to Wong.  Doc. 27 ¶ 61.  Cheong's title, however, remained unchanged (Head of the BDD). Doc. 27 ¶ 62.  Cheong felt that his title was "fictional" since his previous reports now reported to Wong instead of to him.  Doc. 27 ¶ 62.  After the April 2018 organizational change, Cheong was given a performance target to originate $319,000,000 of new loans. ¶ 65.  This was a three time increase from his performance target in 2017.  *Id.*  While Wong was SVP & Head of China Business and Corporate Lending, Cheong felt that she compromised his deals and prioritized her deals over his.  Doc. 27 ¶ 66.  Wong additionally rated him a 3 out of 5 on his 2018 performance review, which was an unusually low rating for Cheong, who had received 4s out of 5s in previous years.  Doc. 27 ¶ 67.

Approximately a year and a half later, in January 2020, Maggie Wong replaced Victor Li as General Manager of the New York branch of the bank.  ¶ 71.  Shortly thereafter, BEA gave Cheong a 2 out of 5 on his performance review.  Doc. 27 ¶ 77.  This was Cheong's lowest rating since he had started at BEA.  Doc. 27 ¶¶ 71–72.

With Wong's promotion to General Manager, her previous position was now vacant; however, Wong informed Cheong, in a meeting that occurred in January 2020, that Cheong would not be considered for the position.  Doc. 27 ¶ 79.  Rather, Wong intended to hire a new person from the role, who Cheong would report to.  Doc. 27 ¶ 79.  Cheong felt that he was the obvious choice for the position.  Doc. 27 ¶ 78.  During this meeting, Wong told Cheong that people were "talking behind his back."  Doc. 27 ¶ 80.  Cheong felt that Wong's statement was a reference to his sexuality, which he believed that Wong was weaponizing in order to prevent him from questioning her about the open position.  *Id.*

In February 2020, Wong hired Howard Hsu as a SVP and Head of Corporate & Real Estate Business.  Doc. 27 ¶ 97.  Hsu is one year younger than Cheong and is Taiwanese.  Doc. 27 ¶ 100.  Cheong states that this position was functionally the same role that Wong had previously held but with a different title.  Doc. 27 ¶ 97.  Cheong believed he was more qualified than Hsu for this role due to his five years of experience at BEA and proven track record in soliciting deals.  Doc. 27 ¶ 101.  Cheong also felt that he had already performed the duties of the position of the Head of Corporate & Real Estate Business position, albeit under a different name.  Doc. 27 ¶ 98.

Due to the pandemic, the New York Branch began remote work in March of 2020.  Doc. 27 ¶ 103.  Hsu subsequently emailed Cheong his performance goals for 2020 in May.  Doc. 27 ¶ 106.  Cheong found that these goals were unfair based on the poor state of the New York real estate market in light of the pandemic.  Doc. 27 ¶ 108, 112.  Cheong asked Hsu to clarify if these goals were entirely Cheong's responsibility or if they were for the entire six-person team that Hsu headed.  Doc. 27 ¶ 109.  Hsu could not provide clarification on these questions other than that the goals came directly from Wong.  Doc. 27 ¶ 111.  Additionally, during the time when BEA was operating remotely, BEA did not provide Cheong with the software required to view and retrieve files and records necessary to do his job, making remote work very difficult for Cheong.  Doc. 27 ¶ 104.

In August 2020, Hsu resigned from BEA and his position was left open.  Doc. 27 ¶ 113.  Wong hired Helen Shek, who is from Hong Kong and younger than Cheong, to be the interim Department Head.  Doc. 27 ¶ 125.  Several months later, in January 2021, Wong rated Cheong a 1 out of 5 on his performance review, the lowest possible rating.  Doc. 27 ¶ 149.  Doc. 27 ¶ 155.  During the review process, Wong admitted to Cheong that the performance goal Hsu had given to him was for the entire department.  Doc. 27 ¶ 151.  Wong also criticized Cheong during this meeting for not attaining the loan origination target.  Doc. 27 ¶ 152.  Cheong, however, states that he surpassed his targets, but Wong refused to fully credit two of the five loans since they were only minimally drawn in 2020.  Doc. 27 ¶ 155.  Cheong states that this decision was based on a discriminatory animus and that she was setting him up to fail.  Doc. 27 ¶ 156, 159.

George Benakis, an American citizen, was hired as the new SVP and Head of Corporate & Real Estate Business in February 2021.  Doc. 27 ¶ 160.  Cheong again felt he was more qualified for this position than Benakis.  Doc. 27 ¶¶ 166–168.  Benakis was 10 years younger than Cheong when he was hired.  Doc. 27 ¶ 161.  Benakis is heterosexual and from America, which Cheong stated people from Hong Kong consider "a high value country compared to the Philippines."  Doc. 27 ¶ 162.

Wong placed Cheong on a performance improvement plan ("PIP") in April 2021.  Doc. 27 ¶ 169.  The PIP set expectations for Cheong that he found to be excessively burdensome and not representative of typical responsibilities for his role as Head of the BDD.[2]  Doc. 27 ¶¶ 170–174.  Cheong believed the PIP was not justified on account of his performance and refused to sign it,[3] despite contrary demands of BEA, Wong, and Benakis.  Doc. 27 ¶ 175.

---

[2] Cheong states that the duties assigned to him were "[b]usiness [m]anager [t]asks" as well as development work, and specifically that he was required to "develop business in one quarter that equaled about half the entire department . . . [was] required to develop for an entire year."  Doc. 27 ¶ 174.

[3] Signing the PIP acknowledged that Cheong agreed with the plan, rather than just accepted it.  Doc. 27 ¶ 175.

One week after the issuance of the PIP, Wong circulated a new organizational chart, changing Cheong's title from SVP & Head of the BDD to SVP & Senior Business Manager.  Doc. 27 ¶ 179.  Cheong felt that this was a demotion as well as an attempt by Wong to "cover herself for wrongly having assigned him business manager duties" in the PIP.  Doc. 27 ¶ 180.  After circulating the new organizational chart, Wong again told Cheong that people were "talking behind his back."  Doc. 27 ¶ 184.  Cheong believed that Wong was referring to him being gay and was using that as a threat to make him sign the PIP in order to not be "outed" to his coworkers.  *Id.*  Cheong asserts in the SAC that being gay "is still very taboo in Hong Kong."  Doc. 27 ¶ 184.

Cheong also alleges that Wong had a "clique" of employees at the New York Branch from Hong Kong and China, who Cheong felt would pry into his personal life to provide information to Wong.  Doc. 27 ¶¶ 81–82.  For example, Cheong felt that Yibo Li demonstrated an unusual curiosity about his personal life, at times questioning him about whom he travels with on vacations and rummaging through his desk, or looking at his papers and personal phone when he stepped away.[4]  Doc. 27 ¶ 84.

Cheong states that Wong showed favoritism to Cheong's co-worker James Hua, who is from Taiwan, heterosexual, and fourteen years younger than Cheong.  Doc. 27 ¶ 86-87.  Cheong felt that Wong exhibited a hostile attitude towards him, while expressing support and favorable treatment of Hua.  Doc. 27 ¶ 88.  Cheong believed this was due to the "commonly held view" in Hong Kong that Taiwanese are equal to people from Hong Kong, while those from the Philippines are looked down upon.  Doc. 27 ¶ 91.

Cheong filed a complaint with Human Resources ("HR") at BEA for the first time on May 6, 2021, alleging unlawful discrimination.  Doc. 27 ¶ 186.  Cheong reported to HR that he was placed on the PIP because he was an older, single man from the Philippines.  Doc. 27 ¶ 187.  Once Cheong submitted this complaint to HR, Wong

---

[4] Cheong does not allege when these events occurred.

removed the PIP and told Cheong that he could return to his normal job duties.  Doc. 27 ¶ 196.  HR then launched an investigation into Cheong's claims, and on July 1, 2021 issued a finding that his allegations were unsubstantiated.  Doc. 27 ¶ 198.  Following his complaint, BEA, Wong, and Benakis insisted Cheong's title was business manager and continued to hold Benakis as the SVP & Head of Corporate & Real Estate Business, despite the fact Benakis had not originated any loans.  Doc. 27 ¶¶ 199–200, 204.

On September 2, 2021, four months after his complaint to HR, Cheong filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC").  Doc. 27 ¶ 205.  Following this filing, Cheong was excluded by Wong from a company-wide employee survey from the head office which was distributed in September 2021, which Cheong believes was so he could not inform the head office about his claims of discrimination.  Doc. 27 ¶ 207.  Cheong also alleges that Benakis began to impede his work, such as by deprioritizing his loan originations, preventing his loans from moving forward, and deleting his work on projects.  Doc. 27 ¶ 210. Defendants also refused to let Cheong use a certain $162 million line for low yielding loans.  Doc. 27 ¶ 211.

In early January 2022, Cheong received a 2 out of 5 on his performance review from Benakis for the fiscal year of 2021.  Doc. 27 ¶ 212.  Cheong also received a 0% score from Benakis in the category of "Ensure High Standards of Credit Underwriting," even though he had met his targets under the PIP.  Doc. 27 ¶¶ 222–223.  Benakis refused to allow Cheong to enter figures in the Financial Measures section[5], which accounts for 60% of the performance review, and did not credit $75 million in loans for which Cheong believes he should have been credited with.  Doc. 27 ¶¶ 218, 224.  Benakis additionally withheld resources from Cheong and ignored various communications from him.  Doc. 27 ¶ 224.  Cheong noted that the standards applied to loans proposed by Benakis were

---

[5] Cheong does not allege what these figures were.

much more lenient in comparison to the very rigid standards applied to Cheong's. Doc. 27 ¶ 225. At the request of Benakis, Cheong circulated a memo in June 2022, but Benakis objected to the format and told Cheong that his work was substandard.[6] Doc. 27 ¶¶ 229–230. Cheong stated that he completed the memo pursuant to the company's standards. *Id.*

In response to the tension between Benakis and Cheong, Wong suggested that Cheong be transferred to another position within the bank, which Cheong objected to. Doc. 27 ¶¶ 234–235. In June 2022, Cheong was assigned what he claims were "objectionable performance goals substantially similar to those assigned to him in 2021." Doc. 27 ¶ 237. Cheong does not specify what the new goals entailed, but he asserts that they the goals were not fairly distributed among others in the department and were setting him up for failure. Doc. 27 ¶ 238.

In September 2022, BEA announced that Wong would be retiring from her position as General Manager of the New York branch and would be replaced by Francis Wong. Doc. 27 ¶¶ 240–241. F. Wong was 51 at the time of his hiring, is a native of Hong Kong, is younger than Cheong and Benakis, and has a background in banking operations. Doc. 27 ¶¶ 242, 244–245. Cheong was not considered for this position or given any opportunity to apply. Doc. 27 ¶ 247. Cheong believed that he and Benakis were more qualified than F. Wong for the position. Doc. 27 ¶ 262.

In January 2023, four months after F. Wong started in his position, F. Wong and Benakis gave Cheong a 2 out of 5 on his performance review. Doc. 27 ¶ 264. Cheong believed that this low rating was in retaliation for his filing of the instant action[7] and complained to Benakis on January 20, 2023. Doc. 27 ¶ 266.

---

[6] Cheong does not allege in the SAC the subject matter of the memo.

[7] Cheong filed his original Complaint in this Court on October 27, 2022.

F. Wong and Cheong met twice in February 2023 where they discussed all of Cheong's performance reviews, including his most recent one.  Doc. 27 ¶¶ 269, 294.  F. Wong explained to Cheong that the performance rating was a fair and accurate representation of Cheong's work and had no connection to Cheong's complaint of discrimination.  Doc. 27 ¶ 267.  Cheong explained to F. Wong that Benakis failed to credit Cheong for some of his loans, failed to consider Cheong's efforts to generate new deals, conspired with Wong and Chong Tan[8] to deny him approval on five of the loans, excluded Cheong from department emails, and generally treated him unfairly.  Doc. 27 ¶¶ 269–291.  Additionally, Cheong and F. Wong discussed the possibility of Cheong doing annual loan reviews, Doc. 27 ¶ 305, but Cheong explained to F. Wong how this would be a demotion since this was a task assigned to business managers.  Doc. 27 ¶ 306.  F. Wong also discussed with Cheong how his low performance reviews may result in another PIP, Doc. 27 ¶ 270, and the issues that Cheong had been having with Benakis.  Doc. 27 ¶ 290.  F. Wong stated that he would speak about the issues with Benakis as well.  Doc. 27 ¶ 292.

In April 2023, BEA announced multiple promotions.  Doc. 27 ¶ 323.  Cheong did not receive a promotion.  *Id.*  Cheong filed his amended complaint in the instant action on April 5, 2023, and that same morning, Cheong was terminated on the basis of "position elimination."  Doc. 27 ¶ 332–34.

### B.  Procedural Background

Cheong filed a charge of discrimination with the EEOC, on September 2, 2021.  Doc. 27 ¶ 13.  The EEOC issued Cheong a notice of right to sue on July 29, 2022, Doc. 27 ¶ 14, and he filed this lawsuit on October 27, 2022.  Doc. 1.  Cheong amended his complaint on April 5, 2023, Doc. 17, and amended again on May 31, 2023.  Doc. 25.  On June 2, 2023, Cheong filed the SAC.[9]  Doc. 27.

---

[8] Chong Tan is Head of the local risk management unit.

[9] Cheong replaced his SAC on June 2, 2023 with a new SAC, due to a filing error.

The SAC alleges the following counts against BEA:  (1) sexual orientation and national origin discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); (2) unlawful retaliation in violation of Title VII; (3) age discrimination and retaliation in violation of the Age Discrimination in Employment Act ("ADEA"); (4) sexual orientation, national origin, and age discrimination in violation of the New York State Human Rights Laws("NYSHRL"); (5) unlawful retaliation in violation of the NYSHRL; (6) age, sex, and national origin discrimination, and a hostile work environment, in violation of the New York City Human Rights Law ("NYCHRL"); (7) unlawful retaliation in violation of the NYCHRL; (8) interference with protected rights in violation of the NYCHRL; and (9) employer liability for the unlawful discriminatory acts of employees pursuant to the NYCHRL.  Doc. 27 ¶¶ 341–395.

On June 21, 2023, BEA moved to dismiss certain of the claims as time-barred. Doc. 30.  Alternatively, BEA moved to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  *Id.*

## II.    LEGAL STANDARD

### A.  Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

When ruling on a motion to dismiss pursuant to F.R.C.P 12(b)(6), the Court is required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's favor.  *Walker v. Schult*, 717 F. 3d 119, 124 (2d Cir. 2013).  However, the Court is not required to give credence to "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Therefore, in order to satisfy F.R.C.P. Rule 8, which outlines pleading standards, a complaint must contain enough factual information on its face to plausible state a claim for relief.  *Iqbal,* 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).  In the context of discrimination claims, plaintiffs "need not allege facts establishing each element of a prima facie case of discrimination," but "must at minimum assert nonconclusory factual

matter sufficient to nudge is claims across the line from conceivable to plausible" in order to survive a motion to dismiss. *E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 680).  To meet the plausibility standard, a plaintiff is required to support his claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570, 127).  If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.  However, this "flexible plausibility standard" is not a heightened pleading standard, *In re Elevator Antitrust Litig.,* 520 F.3d 47, 50 n.3 (2d Cir. 2007) (internal quotation marks and citation omitted), and "a complaint … does not need detailed factual allegations" to survive a motion to dismiss.  *Twombly*, 500 U.S. at 555.

## III.   DISCUSSION

### A.  Statute of Limitations

BEA argues that any of Cheong's allegations that occurred before November 5, 2020 are time-barred by the applicable statutes of limitation for Title VII and the ADEA, and any allegations that occurred before September 1, 2018 are similarly time-barred by the statutes of limitation for the NYSHRL and the NYCHRL.  Doc. 30 at 14–15.  Cheong argues that his claims out of the limitations periods are timely because the "continuing violation" doctrine should apply.  Doc. 40 at 14–17.  Additionally, Cheong argues that even if some of his claims are time-barred, he can use them as background evidence in support of his timely claims.  *Id.* at 17.

Pursuant to Title VII and the ADEA, a plaintiff must initiate civil action within 300 days of when the unlawful practice occurred.  *See O'Malley v. GTE Service Corp.*, 758 F. 2d 818, 820 (2d Cir. 1985).  Cheong filed a complaint with the EEOC on September 2, 2021.  Doc. 27 ¶ 205.  Therefore, any claims of discriminatory action taken against Cheong prior to November 5, 2020—300 days prior to the EEOC complaint— would normally be time barred pursuant to Title VII and the ADEA.  The statute of

limitations to file a claim pursuant to the NYSHRL and the NYCHRL is three years. *Wilson v. New York City Police Dept.*, No. 20 Civ. 4558 (JMF), 2011 WL 1215735, *4 (S.D.N.Y. Mar. 25, 2011). Therefore, any claims of discriminatory action taken against Cheong prior to September 2, 2018, would normally be time barred pursuant to the NYSHRL and the NYCHRL.

However, some claims outside of the limitations periods can be timely if they fall under the "continuing violation" doctrine. To establish a "continuing violation" in the Second Circuit, a plaintiff must allege a series of separate acts, some of which occur within the applicable statute of limitations, that collectively constitute one unlawful act. *See Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009). This "doctrine does not apply to discrete acts, but only to ongoing circumstances that combine to form a single violation that cannot be said to occur on any particular day." *Kellogg v. N.Y. State Dep't of Corr. Serv's.*, No. 07 Civ. 2804 (BSJ), 2009 WL 2058560, at *1 (S.D.N.Y. July 15, 2009). "Termination, failure to promote, and refusal to hire are considered 'discrete acts' which are 'easy to identify' and claims based on each are barred if not timely filed." *Valtchev v. City of New York*, 400 Fed. App'x 586, 588 (2d Cir. 2010) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)). Courts in the Second Circuit have viewed the doctrine with disfavor. *See Stamm v. New York City Transit Auth.*, No. 04 Civ. 2163 (SLT) (JMA), 2013 WL 244793, at *8 (E.D.N.Y. Jan. 22, 2013) (internal citations omitted); *see also Trinidad v. N.Y.C. Dept. of Correction*, 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006) (collecting cases).

Here, the continuing violation doctrine is inapplicable because Cheong's pleadings only indicate discrete incidents. Cheong claims that BEA had a policy of only hiring Asians from certain Asian countries, excluding the Philippines, and "skews its employee and manager population . . . to be younger," and to prioritize heterosexual people from advancement. Doc. 40 at 13. However, Cheong's discrimination and retaliation claims are based on his failure to be considered for various positions at BEA,

poor performance reviews, assignment of higher performance targets, which are all discrete actions that occurred on separate dates and were not part of a longstanding practice. *See Valtchev*, 400 Fed. App'x. 586 at 588-89 (finding that plaintiff's allegations of being "denied promotions and advancements" and other retaliatory events did not constitute a "long-standing policy and practice" and therefore did not trigger the continuing violations doctrine); *see also Spires v. MetLife Group, Inc.*, No. 18 Civ. 4464 (RA) 2019 WL 4464393, at *4 (S.D.N.Y. Sept. 18, 2019) (holding that for the doctrine to apply, a plaintiff must show that the employer has engaged in an ongoing pattern or practice as a "standard operating procedure."). Accordingly, the Court will not consider the untimely claims as part of a continuing violation in the analysis below. However, where appropriate, these acts can be used as background evidence in support of the timely claims. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 102 (2002) (finding that employees may use discrete time-barred acts as background evidence to support a timely claim). [10]

### B. Age Discrimination Claims

Cheong brings a claim against BEA for age discrimination in violation of the ADEA. He alleges that his low performance ratings, placement on a PIP, and BEA's failure to promote him were related to his age and BEA's desire to "skew" the company younger. Doc. 27 ¶ 7; Doc. 40 at 22–28. BEA argues that negative personnel actions against Cheong were based on his actual job performance and had no connection to his age. Doc. 30 at 21–24.

Pursuant to the ADEA, discrimination is prohibited based on "inaccurate and stigmatizing stereotypes" about employees over the age of 40 and specifically forbids employers from "fail[ing] or refus[ing] to hire … or discharge[ing] any individual or

---

[10] The fact that Maggie Wong was hired over Cheong and that his job duties were transferred to her are time-barred under federal, state, and city law. The fact that Cheong was given a higher performance target in 2018, low performance reviews in 2018 and 2019, that Wong told him that others were "talking behind his back" in 2020, and that Hsu was hired over him in 2020 are time-barred under federal law.

otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609-10 (1993).

At the motion to dismiss stage, Cheong's burden is only to demonstrate a prima facie case of discrimination[11] by showing that (1) he is a member of a protected class, (2) he was qualified for the position he sought, (3) that he suffered an adverse employment action, and (4) that he can sustain a minimal burden of showing facts suggesting an inference of discriminatory motivation. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 (1973); *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). Cheong must only "give plausible support to a minimal inference of discriminatory motivation" to survive BEA's motion to dismiss. *Littlejohn*, 795 F.3d 297 at 311.

Cheong has sufficiently pled the first three prongs of a prima facie case. Under the first prong, he is a member of a protected class, as he is 63 years old. He has demonstrated his qualifications for the position, under the second prong, because he has an MBA, a strong accounting background, 25 years of experience working in commercial banking, and his high performance review and accompanying salary increase at the beginning of his employment with BEA. Under the third prong, Cheong sufficiently alleges an adverse employment action. *See Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) ("Examples of materially adverse changes include 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'"). Here, Cheong specifically points to BEA's failure to

---

[11] Cheong's claim pursuant to the ADEA is properly analyzed according to the burden-shifting framework as set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*. *Delaney v. Bank of America Corp.*, 766 F. 3d 163, 167 (2d Cir. 2014) ("it is well established that the burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green* … applied to claims brought under the ADEA.")

promote him, his placement on a PIP, and the hostile attitude toward him in comparison to other employees.

Cheong argues, under the fourth prong, that the company was aiming to "skew younger" and that BEA was attempting to "oust" him from the company through the actions they took against him due to his age.  Doc. 27 ¶ 7.  To support an inference of discrimination, Cheong must show that the alleged adverse action "was motivated at least in part by [BEA's] discriminatory intent."  *Pompey-Primus v. Success Acad. Charter Sch., Inc.*, No. 21 Civ. 3981 (KPF), 2022 WL 504541, at * 6 (S.D.N.Y. Feb. 17, 2022).  A plaintiff can show evidence of discriminatory intent either by alleging "direct evidence of intent to discriminate . . . or by indirectly showing circumstances giving rise to an inference of discrimination."  *Vega*, 801 F.3d at 87.  Indirect circumstances that give rise to an inference of discrimination may include "more favorable treatment of employees not in the protected group."  *Littlejohn,* 795 F.3d at 312 (citation omitted).  Other circumstances may include "bits and pieces of evidence" that work together to create a "mosaic" that supports an inference of intentional discrimination.  *Vega*, 801 F.3d at 87.

However, Cheong has not set forth sufficient facts that demonstrate a plausible inference of discrimination.  Cheong alleges two instances where he was passed over for a promotion[12] by two individuals that were significantly younger than him[13] and had similar, if less extensive backgrounds than him.  Doc. 27 ¶ 161, 164, 244, 245, 262.  Additionally, Cheong stated that Wong, while acting as his boss, expressed favoritism towards Cheong's co-worker Hua, who was younger than Cheong, while repeatedly expressing hostility to Cheong.  Doc. 27 ¶ 88.  These claims, however, are not sufficient to infer that the adverse actions claimed by Cheong had any connection to his age.  *See Vega*, 801 F.3d at 87.  There is nothing in the record that indicated Wong was specifically

---

[12] Cheong, however, did not apply for a promotion or express interest in these positions.  Rather, he states that he felt he was more qualified and the better candidate for these openings, but was not considered.

[13] Benakis was 10 years younger than Cheong and F. Wong was 12 years younger than Cheong.

seeking out younger candidates for the position.  Wong made no references to Cheong's age when discussing the open positions or his job performance.  Additionally, there are no facts that demonstrate Wong's alleged favoritism towards Hua was connected to his age, or that his hostility toward Cheong was due to him being older than Hua.  Therefore, there is no linkage between the adverse employment actions taken and Cheong's protected characteristic.  *See Mitchell v. New York City Department of Education*, No. 20 Civ. 1555 (PGG), WL 2022 621956 (S.D.N.Y. 2022) ("[t]he complaint merely describes adverse employment actions that [plaintiff] experienced, without linking those adverse employment actions in any way to [plaintiff's protected characteristics.]").

*Dunaway v. MPCC Corp.* is instructive.  669 Fed. App'x 21.  In that case, on a motion for summary judgment, the Second Circuit affirmed the judgment of the district court that the plaintiff failed to make out a prima facie case of age discrimination under the ADEA, even when the defendant made several references to age, directly and indirectly, when interviewing the plaintiff, because the law "doe s not make all discussions of age taboo."  *Dunaway,* 669 Fed. App'x 21 at 23.  In contrast, BEA employees did not even reference Cheong's age in any of the allegations supporting his ADEA claim, and thus Cheong's belief that his age was influential in BEA's decisions is unsupported.  Accordingly, Cheong cannot meet the fourth prong required to show a prima facie case of age discrimination.

Therefore, BEA's motion to dismiss Cheong's age discrimination claim pursuant to the ADEA is granted.

### C.  Sexual Orientation Discrimination Claims

Cheong brings a claim for sexual orientation discrimination in violation of Title VII.  Specifically, he alleges that BEA discriminated against him based on his sexual orientation by "weaponizing his sexual orientation" and "prying into his personal life." Doc. 27 ¶ 80; Doc. 40 at 22–23.  Cheong states that because of his sexual orientation, he was not promoted and rather was demoted, received low performance ratings, and was

placed on a PIP.  Doc. 40 at 22–23; *see generally* Doc. 27.  Cheong bases his belief on a theory that being gay is "taboo" in Hong Kong.  Doc. 27 ¶ 10.  BEA states that Cheong's claims are his own subjective assumptions and that he does not state a plausible claim for sexual orientation discrimination.  Doc. 30 at 20–21.

Title VII prohibits employers from "discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's … sex."  42 U.S.C. § 2000e-2(a)(1).  The Supreme Court clarified in *Bostock v. Clayton County, Georgia* that sexual orientation discrimination falls under this protected category since sex plays a "necessary and undisguisable" role in sexual orientation, meaning that any adverse employment action taken against someone for their sexual orientation would not have occurred "but for" their sex.  590 U.S. 644, 652-56 (2020).

Claims pursuant to Title VII are analyzed under the same *McDonnell Douglas* burden-shifting framework as described above in relation to Cheong's age discrimination claims.  *See Littlejohn v. City of New York*, 795 F. 3d 297, 307 (2d Cir. 2015) (applying *McDonnell Douglas* to Title VII claim).  As above, Cheong must only demonstrate a prima facie case of discrimination.  At the motion to dismiss stage, Cheong must only demonstrate that his claims "give plausible support to a minimal inference of discriminatory motivation."  *Littlejohn*, 795 F.3d 297 at 311.

Cheong satisfies the first three prongs of his prima facie case for sexual orientation discrimination.  Cheong identifies as gay, which sufficiently demonstrates that he is a member of a protected class under Title VII.  *See Bostock*, 590 U.S. at 652-56.  Additionally, under the second prong, as shown in conjunction with his age discrimination claims, Cheong has sufficiently proven that he was qualified for his position.  Cheong alleges that BEA took adverse employment actions against him by

demoting him, failing to promote him,[14] giving him low performance ratings, placing him on a PIP, and displaying hostility displayed towards him in comparison to other employees.  Doc. 27.

Regarding the fourth prong, Cheong states the adverse actions taken against him were motivated by discriminatory animus against his sexual orientation.  Again, Cheong must show evidence of discriminatory intent either by alleging "direct evidence of intent to discriminate . . . or by indirectly showing circumstances giving rise to an inference of discrimination."  *Vega*, 801 F.3d at 87.  These indirect circumstances may include "more favorable treatment of employees not in the protected group."  *Littlejohn*, 795 F.3d at 312 (citation omitted).

Here, Cheong's allegations do not suffice. Cheong states that he felt pressured to sign the PIP because he felt that he would be "outed as gay" if he didn't.  Doc. 27 ¶ 184. Cheong's subjective interpretation of the events, without more, does not provide evidence of an intent to discriminate.  *Vega*, 801 F.3d at 87; *see also Smith v. Bronx Cmty. Coll. Ass'n*, No. 16-Civ. 3779 (JMF), 2017 WL 727546, at *2 (S.D.N.Y. Feb. 23, 2017) ("It is well established, however, that a plaintiff's subjective belief that she was the victim of discrimination, no matter how strongly felt, is insufficient to satisfy the burden to plead facts that could plausibly support an inference of discrimination.").  Even taking Cheong's claims as true, Cheong has not sufficiently pled a plausible claim for an inference of sexual orientation discrimination at this stage pursuant to Title VII.  Isolated comments (unless they are extremely serious), do not lead to an inference of discriminatory intent.  *Petrosino v. Bell Atl.*, 385 F. 3d 210, 223 (2d Cir. 2004).

---

[14] Cheong also asserts that BEA discriminated and retaliated against him by failing to promote him.  ¶ 74–75.  However, Cheong does not show that he applied for and was rejected from any of the positions that he sought in the SAC.  *See Semerano v. Woodner Co.*, 2018 U.S. Dist. LEXIS 110566, at *9 (S.D.N.Y. July 2, 2018) (Ramos, J.) ("While Second Circuit case law provides that a failure to promote may constitute an adverse employment action . . ., in order to state such a claim, a plaintiff must show that he 'applied for a position and was rejected,' . . . a factual allegation that is wholly lacking here.").

Additionally, Cheong claims that Yibo Li, whom he describes as being part of "Wong's clique," rummaged through his desk, looking at his papers and personal iPhone. BEA notes, however, that nothing indicates that Wong was even aware of Cheong's sexual orientation. Doc. 30 at 20– 21. *See Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007) ("The sine qua non of a gender-based discriminatory action claim under Title VII is that 'the discrimination must be *because of* sex.'") (emphasis in original) (quoting *Leibovitz v. N.Y.C Transit Auth*., 252 F.3d 179, 189 (2d Cir. 2001)); *see also Pompey-Primus*, 2022 U.S. Dist. LEXIS 29313, at *17 ("[A]bsent additional detail linking [Defendant's conduct] to Plaintiff's sex, it does not plausibly suggest a discriminatory motive.").

Accordingly, BEA's motion to dismiss as it relates to this claim is granted.

### D.  National Origin Discrimination Claims

Cheong brings a claim for national origin discrimination pursuant to Title VII. Cheong claims that due to his national origin as a Filipino, he was discriminated against because he was not from Hong Kong. Doc. 27 ¶ 32; Doc. 40 at 19–21. Cheong states that this is a result of the history of racism against Filipinos by people from Hong Kong and that he was passed over for multiple positions by non-Filipinos. Doc. 27 ¶¶ 34, 60. Cheong specifically alleges that Wong showed favoritism to certain employees within her "favored national origin status" and that she looked down upon those from the Philippines. Doc. 27 ¶ 85. Additionally, he states that Wong has repeatedly exhibited a hostile attitude towards Cheong while supporting non- Filipinos such as his co-worker Hua, who is Taiwanese. Doc. 27 ¶¶ 86-89. BEA states that these allegations are unfounded and that Cheong's assumption that all people from Hong Kong discriminate against Filipinos is inaccurate. Doc. 30 at 16–20.

Cheong's national origin claims are also analyzed pursuant to the *McDonnell Douglas* framework. *See Asiedu v. Broadreach Med. Res*., 19 Civ. 11825 (ER), 2022 U.S. Dist. LEXIS 165568, at *26 (S.D.N.Y. Sep. 13, 2022). In other words, Cheong must

show that:  (1) he is a member of a protected class; (2) he was qualified for the position in question; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to an inference of discrimination.  *Ruiz v. Cty. of Rockland*, 609 F.3d 486, 491–92 (2d Cir. 2010).  Cheong must only demonstrate "plausible support to a minimal inference of discriminatory motivation" to satisfy his burden at the motion to dismiss stage and is not required to provide support proving each prong of a prima facie case.  *Littlejohn*, 795 F.3d at 311.

Cheong satisfies the first three prongs of a prima facie case for national origin discrimination.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 (1973).  As a Filipino man, he is a member of a protected class.  He has sufficiently demonstrated the second prong that he is qualified for the position that he held.  He also asserts the same adverse employment actions as set forth above —his low performance reviews, lack of promotion, and placement on a PIP.

However, Cheong does not satisfy the fourth prong of the test.  Although Cheong alleges that there is a history of racism against Filipinos by people from Hong Kong and that this resulted in him being passed over for multiple positions by non-Filipinos, these subjective beliefs are not sufficient to form the basis of an inference of discriminatory motivation.  Cheong does not allege any specific remarks that Wong or anyone at BEA made in reference to his national origin, or even cites indirect evidence. *See Vega*, 801 F.3d at 87.  And his subjective belief alone is insufficient.  *See Smith v. Bronx Cmty. Coll. Ass'n,* No. 16 Civ. 3779 (JMF), 2017 WL 727546, at *2 (S.D.N.Y. Feb. 23, 2017). Accordingly, Cheong has not demonstrated that he was subject to adverse employment actions because of his Filipino heritage.

Additionally, in *Lebowitz v. New York City Department of Education*, the district court dismissed the plaintiff's national origin discrimination claims under Title VII even when the plaintiff alleged that the defendant referred to her Russian accent in an insulting manner.  407 F. Supp. 3d 158, 176–177 (E.D.N.Y. 2017).  The district court determined

that stray remarks, without additional facts, did not suggest that the actions taken against the plaintiff were due to discrimination against her national origin.  *Id*.  The Court finds the logic of *Lebowitz* persuasive, and finds that Cheong's allegations fail rise to even that level.

Accordingly, BEA's motion to dismiss his national origin claims pursuant to Title VII is granted.

### E.  Retaliation Claims

Cheong claims that BEA retaliated against him in violation of Title VII and the ADEA.  Pursuant to Title VII and the ADEA, retaliation for engaging in a "protected activity" is prohibited.  For example, Title VII prohibits employers from discriminating against an employee because "he has opposed any practice made an unlawful employment practice by this subchapter" or "has made a charge, testified, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  The Supreme Court has discussed that in the context of a Title VII retaliation claim, an adverse employment action consists of any action that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).

Retaliation claims pursuant to Title VII and the ADEA are evaluated under the same burden shifting test as discussed in relation to Cheong's discrimination claims.  *Jute v. Hamilton Sundstrand Corp.,* 420 F.3d 166, 173 (2d Cir. 2005).  To state a prima facie case of retaliation in the employment context, a plaintiff must show:  (1) participation in a protected activity, (2) that the defendant knew of the protected activity, (3) an adverse employment action, and (4) a causal connection between the protected activity and the adverse employment action.  *McMenemy v. City of Rochester*, 241 F. 3d 279, 282-83 (2d Cir. 2001).  Additionally, timing can be an indicator of a causal connection between the alleged act and the engagement in protected activity.  *Vega v. Hempstead Union Fee School Dist.*, 801 F. 3d 72, 90 (2d Cir. 2015).  However, unlike Cheong's discrimination

claims, he must plausibly demonstrate that the alleged retaliation was a "but-for" cause of the employer's actions.  *Id.*

Cheong may demonstrate that BEA retaliated against him based on his protected activity "either:  (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 464 (S.D.N.Y. 2012) (quoting *Gordon v. N.Y. City Bd. Of Ed.*, 232 F.3d 111, 117 (2d Cir. 2000)).

Cheong participated in a protected activity by complaining to HR, filing a charge with the EEOC, and then subsequently filing the instant lawsuit.  Doc. 27.  It is not disputed that BEA was aware of these activities.  Doc. 27.  Following Cheong's complaints to HR and his filing of a complaint with the EEOC, he claims that he was retaliated against by his exclusion in the company wide survey, receiving low performance review scores, Wong's suggestion to transfer him, Benakis impeding on his work, and BEA's failure to promote him.  Additionally, following his filing of his SAC, Cheong states that BEA retaliated against him by giving him a low rating in his performance review and by terminating him.  Although these actions were taken around the time of Cheong's complaints, nothing in his complaint indicates that these actions would not have been taken but-for his filing of the complaints.  Indeed, The Second Circuit has instructed that when timing is the basis for a retaliation claim, "gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of discrimination does not arise."  *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2011) (emphasis added); *see also Lees v. Graduate Ctr.*, 696 Fed. App'x 530, 531 (2d Cir. 2017) (affirming dismissal of the plaintiff's retaliation claims since she did not begin engaging in protected activity until after her supervisor subjected her to alleged unfair treatment). Cheong had already received multiple low

performance reviews, was struggling to work with Benakis, and was no considered for various promotions, well before he filed the instant lawsuit.  Accordingly, an inference of retaliation based on allegedly suspicious timing does not arise from his claims.

Based on his allegations in the complaint, Cheong has not sufficiently stated a claim for retaliation pursuant to Title VII and the ADEA and BEA's motion to dismiss these claims is granted.

### F.  Cheong's State and City Law Claims

In addition to his Title VII and ADEA claims, Cheong alleges state and local law claims for violations of the NYSHRL and the NYCHRL.  Doc. 27 ¶¶ 365–395.  Pursuant to 28 U.S.C. § 1367(c)(3), if the Court has dismissed all of the claims over which it has original jurisdiction, it may decline to exercise jurisdiction over any non-federal claims over which it could have exercised supplemental jurisdiction.  28 U.S.C. § 1367(c)(3).

Subject matter jurisdiction in the instant action is based on federal question jurisdiction.  28 U.S.C. § 1331.  Because no federal claims remain that are subject to a merits determination by this Court, it would be inappropriate to adjudicate Cheong's state and city law claims.  *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1996) ("Certainly, if the federal claims are dismissed before trial … the state claims should be dismissed as well.");  *McGugan v. Aldana-Bernier*, No. 11 Civ. 00342 (TLM), 2012 U.S. Dist. LEXIS 60340, at *21 (E.D.N.Y. Apr. 30, 2012) *aff'd*, 752 F.3d 224 (2d Cir. 2014) ("[W]hen all federal claims are eliminated in the early stages of litigation, the balance of factors generally favors declining to exercise pendent jurisdiction over remaining state law claims and dismissing them without prejudice.") (internal citations omitted).  Therefore, all non-federal claims contained in Cheong's complaint are hereby dismissed without prejudice.

**IV.    CONCLUSION**

For the foregoing reasons, BEA's motion to dismiss Cheong's Second Amended Complaint is GRANTED.  The Clerk of the Court is respectfully directed to terminate the motion, Doc. 29, and to close the case.

It is SO ORDERED.

Dated:    March 29, 2024
          New York, New York

_____
EDGARDO RAMOS, U.S.D.J.

24